## KETTLE RANGE CONSERVATION GROUP, Plaintiff,

v.

Bob BERGLUND, Secretary, United States Department of Agriculture; R. Max Peterson, Chief, United States Forest Service; R. E. Worthington, Regional Forester, Region Six; United States Forest Service; Robert B. Terrill, Forest Supervisor, Colville National Forest, United States Forest Service, and the United States Forest Service or agency of the United States Department of Agriculture, Defendants,

Northwest Pine Association and Sand Poil Lumber Company, Defendant-Intervenors.

No. C 79–338.

United States District Court, E. D. Washington.

Nov. 26, 1979.

John F. Hayden, Spokane, Wash., and Peter C. Wagstaff, Coeur d'Alene, Idaho, for plaintiff.

James J. Gillespie, U. S. Atty., and James B. Crum, Asst. U. S. Atty. for the Eastern District of Washington, Spokane, Wash., and Robert M. Simmons, Atty., U. S. Dept. of Agriculture, Portland, Or., for government defendant.

James K. Morgan, Spokane, Wash., and Wesley R. Higbie, San Francisco, Cal., for defendant-intervenor Northwest Pine Association.

MacGillivray & Jones, and Richard E. Hayes, Spokane, Wash., and Morrison, Dunn, Cohen, Miller & Carney, and George G. Cooper, III, Portland, Or., for defendant-intervenor San Poil Lumber Company, Inc.

## MEMORANDUM DECISION

HAUK,* District Judge.

All of the evidence having been fully presented, and the Court being in receipt of and having considered all of the parties' memoranda of points and authorities, and the points and authorities therein contained, and based upon the evidence, said points and authorities, and the law applicable to this proceeding, and all the records and files herein, now makes and enters the following decision which shall constitute its Findings of Fact and Conclusions of Law pursuant to Rule 52(a), Federal Rules of Civil Procedure.

The "Ryan Timber Sales Area"—approximately one thousand eight hundred eighty-nine (1889) acres, of which approximately 174 acres are within the Profanity Roadless Area, is part of the lands owned by the United States of America and is managed by the United States Forest Service of the United States Department of Agriculture, pursuant to law and official federal regulations contained in the United States Code and in the Code of Federal Regulations.

On March 24, 1978, after a period of approximately four (4) months for public comment and consultation with, and consideration of the view of numerous federal, congressional, Washington State, Ferry County Washington businesses and other organizations, universities, colleges, private groups including the plaintiff, Kettle Range Conservation Group, and private individuals, as well as documentary responses, all of which are meticulously listed and which number at least an estimated thousand such parties, pages 103–106, Government Defendants' Exhibit A, the final Environmental Impact Statement on the Kettle Range Planning Unit of the Colville National Forest, in which the Ryan Timber Sale Area is located, was published by the United States Forest Service. This final Environmental Impact Statement constitutes a programmatic and comprehensive review of the environmental effects of Forest Service Management goals, objectives, and implementations for the Kettle Range Planning Unit, an area of approximately 232,550 acres, including the Profanity Roadless Area and the Ryan Timber Sale Area previously described herein.

On August 8, 1979, the Forest Service published a document entitled Environmental Assessment Report for the specific area located within the Kettle Range Planning Unit, Colville National Forest, including the Ryan Timber Sale and the Profanity Roadless areas. The Environmental Assessment Report contained a determination that the Forest Service plan for management of these areas described in, and the action contemplated in the Environmental Assessment Report, would not significantly affect the quality of human environment so as to necessitate processing in an Environmental Impact Statement.

The United States Forest Service personnel investigated and examined the use of the Ryan Timber Sale Area and the entire Kettle Range Planning Unit of the Colville National Forest, as it included the Profani-

* C.D.Cal., sitting by designation for Chief Judge Browning.

ty Roadless Area, for purposes of its timber management program, all as reflected in the Environmental Impact Statement, Government Defendants' Exhibit A.

The Forest Service determined, pursuant to its legal duties and obligations, that timber harvesting was and is a legitimate, legal, appropriate, reasonable, and indeed necessary management goal, and objective for the Kettle Range Planning Unit area, and that existing methods of treatment would be inadequate. This, of course, includes the Ryan Timber Sale Area.

In its programmatic Environmental Impact Statement, Government Defendants' Exhibit A for the Kettle Range Planning Unit of the Colville National Forest, the Forest Service considered, examined, and discussed the possible adverse environmental impact of timber harvesting and concomitant road construction in connection therewith, in these areas. This Environmental Impact Statement provided the programmatic direction that the Forest Service would take for land management within the Ryan Timber Sale Area.

The specific goals and objectives for this area are contained in the Environmental Assessment Report, Plaintiff's Exhibit 1.

The Environmental Impact Statement, Government Defendants' Exhibit A, in its 159 pages of text, and its 17 appendices, considers and evaluates the overall timber management policies for these areas and describes the Forest Service proposal for timber management, historical prospectus of the whole Kettle Range Planning Unit area which includes the Profanity and Ryan Timber Sale areas, and it also considers the environmental situation. This Environmental Impact Statement considers and evaluates the environmental impact of timber management, as well as the favorable environmental effects of timber management and attendant road construction and indeed, the adverse environmental effects, and finally, the preventative, and the mitigating measures adequate to lessen and even eliminate those adverse effects, the relationship between short-term uses of man's environment, and the maintenance of long-term

productivity for these areas, and finally, the irreversible and irretrievable commitment of resources in the areas. The Environmental Impact Statement also considers six alternatives (See Government Defendants' Exhibit A, page 96, et seq.) to the Forest Service's proposed action, or best alternative, and concludes that silvicultural, or growing and harvesting of timber, is the preferred method of Forest Service thinning and logging, and was the best alternative for the Ryan Timber Sale Area in particular, and certainly all of the areas designated as non-wilderness throughout the Kettle Range Planning Unit area.

The Environmental Impact Statement also reflects the fact that the Forest Service consulted with other agencies, experts, and the public, including the plaintiff, in its preparation. The Environmental Assessment Report for the Ryan Timber Sale Area puts into effect the action proposed in the Environmental Impact Statement, and also includes the six alternatives; and the preferred alternative that was selected, namely timber harvesting, in the Environmental Impact Statement, was named as the objective and target goal contemplated by the Forest Service.

The Court specifically finds that the Kettle Range Planning Unit of the Colville National Forest, including the Profanity Roadless Area and the Ryan Timber Sale Area constitute land masses of a relevantly homogeneous geographical and geological character. The Court more specifically finds that the Ryan Timber Sale Area is an area approximately 1,089 acres, of which approximately 174 areas are in the Profanity Roadless Area and the rest of which is in the Kettle Range Planning Unit of the Colville National Forest. Each such area is not materially different from the others, or from each other, in their substantial character as to earth, foliage, timber, the flora and fauna throughout being, if not exactly identical, substantially identical, in character. The plaintiff has alleged in his first cause of action that the Environmental Assessment Report for the Ryan Timber Sale Area did not discuss the "no action" alter-

native. The Court finds to the contrary, because the Environmental Assessment Report specifically refers to and discusses the "no action" alternative on page 12 thereof, Plaintiff's Exhibit 1. Although the title given to this "no action" alternative is "no treatment" alternative, the alternative is still the same. In plaintiff's second cause of action it is alleged that the alternative of deleting some 174 acres in the Profanity Roadless Area, to wit, that portion of the Ryan Timber Sale Area, was not discussed by the Forest Service in its official documents. Again the Court, to the contrary, finds that this alternative is fully covered in the "no treatment" alternative. Also, this alternative was adequately discussed and determined in at least three decisions by officials in high federal administrative positions, including President Carter; the Secretary of Agriculture, Mr. Berglund; the Assistant Secretary of the Department of Agriculture, Mr. Cutler; the Chief of the United States Forest Service, Mr. Maguire; the Regional Forester, Mr. Leisz and the Superintendent of the Colville National Forest, Mr. Terrell.

To require these federal officials, as plaintiff suggests, to reconsider these decisions would be a completely wasted effort, and a complex exercise in futility, and the Court won't require that.

■ Plaintiff's third cause of action alleges that the Environmental Assessment Report is inadequate because it fails to consider long range and cumulative impacts. Again, to the contrary, the Court finds and concludes that on page 25 of the report, Plaintiff's Exhibit 1, there is a specific determination that the proposed Forest Service and federal government action will have no significant effect on the guilty of human environment. The long range impacts, including impacts on wildlife, grazing, visual quality, fire hazards, and recreation were thoroughly considered. A careful reading of the entire report conclusively demonstrates this.

Plaintiff has completely and utterly failed to offer any evidence to refute this overwhelming demonstration, or in any way to support its alleged claim in the third cause of action.

■ In its fourth cause of action, plaintiff alleges that the Environmental Assessment Report failed to explicitly state that it was made in full compliance with the National Forest Management Act of 1976, 16 U.S.C. §§ 1600–1614. Here again, to the contrary, the Court must and does find and conclude that the regulations which now require such an explicit statement of compliance, were not published until September 17, 1979, 44 Federal Register, 53,928, 36 C.F.R. 219 (1979), over a month after the Environmental Assessment Report was published, thus making it not only unnecessary, but impossible to explicitly state compliance with the National Forest Management Act of 1976, which is attached as the first page to the Ryan Timber Sale contract, Government Defendants' Exhibit B. To strike down this sale merely because the certificate of compliance is contained in the sale contract rather than in the Environmental Assessment Report would exalt mere form over obvious substance and would result in an extreme miscarriage of justice. The Court refuses to do this, particularly in this equity action where the plaintiff seeks injunctive relief. Therefore, the Court finds that the certificate of compliance in the Ryan Timber Sale contract is factual, legal and sufficient to comply with the United States Forest Service directive issued on April 11, 1979, by M. Rupert Cutler, Assistant Secretary for Research, Education, and Conservation of the Department of Agricultural, Plaintiff's Exhibit 8, pages 6 and 7.

■■ In plaintiff's fifth and final cause of action, it alleges that the Ryan Timber Sale is a rapid and significant incursion in one of the "controversial areas," in the Colville National Forest, and the Ryan Timber Sale would violate the aforesaid Department of Agriculture Directive made and issued by Assistant Agriculture Secretary, M. Rupert Cutler. This directive merely requires the Forest Service to proceed with the planning and management of the roadless areas designated for "Nonwilderness, in

such a manner as to be consistent with sound resource management," and, in a way "which avoids conflict with more sensitive, more controversial lands for as long as possible." The Court finds that even though this Ryan Timber Sale Area may be and by some people is considered, a controversial area, the plaintiff has completely and utterly failed to show why this sale should not go forward. The Court holds that the Forest Service and the federal officials acted legally, properly, reasonably; not capriciously or arbitrarily but legally and constitutionally. All the federal activity here involved was legal and constitutional.

Because plaintiff has failed to produce any evidence that shows to the contrary, the Court is required and compelled to and does find and conclude that plaintiff has completely failed to show why the sale shouldn't go forward particularly in view of the other portions of that directive requiring the Forest Service to proceed immediately after President Carter's Decision of April 16, 1979, which came five days after the directive. Government Defendants' Exhibit C. Thus the Ryan Timber Sale, the Ryan Timber Sale Area, and all the Forest Service activities in this connection, have been and are in full compliance with the directive and the law, and, of course, the federal constitution. These findings and conclusions are further supported by the fact that this specific sale has been brought to the attention of Mr. Cutler, the author of the Directive, and he in response has definitively stated that all the Kettle Range Planning Unit, Profanity Roadless Area, and the Ryan Timber Sale Area (the 174 acres thereof which are in question here) have been evaluated for their wilderness potential twice. Moreover, he expressed support for all the federal governmental actions taken with respect to the Ryan Timber Sale, including of course, the actions of the Department of Agriculture and the United States Forest Service. See Plaintiff's Exhibit 8. Thereby, Mr. Cutler has given the public, including the plaintiff and the Court, his official interpretation of his own Directive, and has found these federal actions to be in full compliance with the

Directive and the law and regulations. The Court can do no less and so finds and concludes.

■ The Environmental Impact Statement of the timber management plan for the Kettle Range Planning Unit in the Colville National Forest considers and determines fully and adequately the overall timber management policy for this area, and more particularly, considers and determines all matters required to be considered by the National Environmental Policy Act, 42 U.S.C. § 4321, *et seq.*

The management plan for the Ryan Timber Sale Area, in the Kettle Range Planning Unit of the Colville National Forest as reflected in the Environmental Assessment Report for such area, effects no material change in circumstances or departure from the timber management policy covered in the Environmental Impact Statement for this area as a whole.

■ In fact and in law, the Ryan Timber Sale is not a major federal action significantly affecting the quality of the human environment; the probable environmental impacts of these actions are not controversial; nor is the action legislative related— and therefore, does not necessitate the preparation of a special environmental impact statement for the Ryan Timber Sale Area, and particularly the 174 acres that lie in the Profanity Roadless Area, separate and apart from the Environmental Impact Statement prepared for the Kettle Range Planning Unit of the Colville National Forest as a whole. Government Defendants' Exhibit A.

The Forest Service, as reflected in the environmental documents considered by this Court, reached its decision for the Ryan Timber Sale after a comprehensive, complete and good faith consideration and balancing of all the requisite environmental factors. All reasonable alternatives to the proposed action for timber management and road construction were fully considered by the Forest Service, and such consideration is fully documented in all of the official records in evidence here. Nothing to the

contrary appears in any of the evidence before the Court and produced during the trial.

██ The decision of the United States Forest Service in putting out for bid and affirming and approving, and proposing to enter into, the timber contract here involved, in the Ryan Timber Sale Area of the Kettle Range Planning Unit, particularly that portion which is within the Profanity Roadless Area, was not, and is not arbitrary and capricious, is not unreasonable, and is not an abuse of discretion by any of the governmental officials involved, or by any of the government agencies involved. The environmental documents which are part of this record conclusively show that the Forest Service gave much more sufficient weight to all environmental values in reaching its programmatic decisions resulting in this timber sale. The United States Forest Service, in conducting the Ryan Timber Sale, has proceeded in full compliance with the National Environmental Policy Act, 42 U.S.C. § 4321, *et seq.*, and all of the regulations issued thereunder. The Forest Service has proceeded in strict compliance with the Department of Agriculture Directive issued on April 11, 1979, by M. Rupert Cutler, Assistant Secretary for Conservation, Research and Evaluation. Plaintiff's Exhibit 8, pages 6–7.

The Court finds, as a matter of law, therefore, that plaintiff is not entitled to any of the relief sought in the complaint. Judgment must be entered in favor of the defendants and each of them.

LET JUDGMENT BE ENTERED ACCORDINGLY NUNC PRO TUNC the 11th day of October, 1979.